ROSE PARKER *vs.* HAROLD H. KIRKPATRICK.

SAME *vs.* SAME.

Cumberland.    Opinion December 11, 1924.

*In an action for slander if the words spoken by the defendant accusing the plaintiff of larceny were made to a peace officer either for the detection of crime or the protection of his own property, and were made in good faith and without malice, they would be a privileged communication; but if made to the plaintiff in the absence of a peace officer and in the presence of third persons, they would not be so privileged.*

In the assault case, the assault, if any, was merely technical and trifling, and only nominal damages should be allowed.

On exceptions and motion. Two actions, one for slander and the other for assault and battery, based upon the same facts and tried together, and a verdict of $1,016.92 for plaintiff was rendered in the slander suit, and a verdict of $820.91 for plaintiff was rendered in the other case. Defendant excepted to a ruling of the presiding Justice defining a privileged communication in the slander suit, and filed a general motion in the other case. In the slander suit, exceptions overruled. In the assault and battery suit, motion overruled if the plaintiff remits all of the verdict in excess of one dollar within thirty days after rescript is filed with the clerk of the Law Court, otherwise motion sustained.

The case is fully stated in the opinion.

*Max L. Pinansky,* for plaintiff.

*William C. Eaton,* for defendant.

SITTING: CORNISH, C. J., DUNN, MORRILL, WILSON, DEASY, JJ.

CORNISH, C. J. These two actions at law, the one for slander and the other for assault and battery, were based on the same set of facts, were tried together, and resulted in a verdict of $1,016.92 for the plaintiff in the slander suit, and $820.92 in the assault and battery suit. The slander suit is now before the Law Court on exceptions, the assault and battery action on motion.

The incidents complained of occurred on December 12, 1921, within and in front of the Eastman Brothers and Bancroft store on

Congress Street in Portland, of which corporation the defendant was an officer, stockholder and employe, and were the result of certain utterances and acts of the defendant at that time, caused by his belief that the plaintiff had been guilty of shoplifting and had unlawfully appropriated some article from the store.

1. SLANDER SUIT.

The plaintiff claimed that on the day in question in company with her sister she visited the Eastman store for the purpose of purchasing a box of rouge. She had with her an empty box of the kind desired which she had previously purchased in the same store, showed it to the saleswoman, and laid it on the counter. The saleswoman took several boxes from the show case, laid them on the counter and then stooped under the counter to investigate further, but did not find just what was wanted. While she was stooping another employee of the company, Miss Stewart, saw the plaintiff put her hand over something on the counter and transfer it to her pocket. Miss Stewart thinking the plaintiff had purloined some article, reported to the defendant what she had seen. The plaintiff and her sister moved away from the toilet goods department to other parts of the store and just as they were leaving by the Congress Street door the defendant stepped up to the plaintiff and said, "What did you take?" She answered, "I didn't take anything." Then he put his hand in her pocket, took out the empty rouge box and said "What is this?" She said "It is mine." He said "Come out here," meaning on to the sidewalk where people were passing and repassing, and said "What else did you take?" The sister asked him to look into the box, which he did and found it empty. He then said, "Never mind; you have done away with it." She said "If you think I have done away with it, take me into the store and search me." He replied "Never mind." All this on the sidewalk in the presence of the sister and of the passers-by.

The defendant set up by way of brief statement, the defense that whatever was said by him was said in the prosecution of an inquiry into a suspected crime in matters where his interest was concerned and to enable him to protect his own and his employer's interest, in good faith and without malice.

On this point the presiding Justice instructed the jury that if these words were spoken to a peace officer, as to a police officer, a detective, or sheriff or county attorney, either for the detection of crime or for

the protection of his own property, if made in good faith and without malice, it would be a qualifiedly privileged communication, but if made to the plaintiff herself, the one charged with crime, it would not be so privileged.   The precise point raised by the exceptions, as stated by the learned counsel for the defendant in his brief, is "whether a communication which would have been privileged if made to a sheriff or similar officer, necessarily loses that characteristic if made directly to the plaintiff herself."

We think the instruction was correct.

The words claimed to have been employed by the defendant imputing as they did a crime, were admittedly slanderous and if false and not privileged were actionable per se.   *Sullivan* v. *McCafferty*, 117 Maine, 1.   If they constituted a qualifiedly or conditionally privileged communication the legal effect was to throw upon the plaintiff the burden of proving by affirmative evidence actual malice on the part of the defendant.   *Sweeney* v. *Higgins*, 117 Maine, 415.

It is a firmly established element of the law of slander that "a person who makes a communication to a peace officer concerning the commission of crime is not liable to an action for libel or slander according to the weight of authority if the communication was made in good faith for the purpose of bringing an offender to justice." 17 R. C. L., Page 358.   This legal rule rests upon grounds of public policy.   The detection and punishment of crime demand it.   *Elms* v. *Crane*, 118 Maine, 261.   But no such reason exists when the communication is made, as in the case at bar, directly to the alleged culprit in the absence of a peace officer and in the presence of third persons. *Hupfer* v. *Rosenfeld*, 162 Mass., 131.   It then becomes merely a slanderous charge rather widely published.   *Dale* v. *Harris*, 109 Mass., 193.   No question of public policy is then involved which can remove such a communication from the realm of actionable slander.   The reason for the exception having ceased, the exception itself ceases.

Counsel for defendant confidently relies upon *Brow* v. *Hathaway*, 13 Allen, 239, and *Pion* v. *Caron*, 237 Mass., 108.   Those cases contained an element that does not exist in the case at bar and are clearly distinguishable.   The words uttered in those cases were in answer to questions put to the defendant, and the rule applicable on such occasions is well stated in the syllabus in *Brow* v. *Hathaway* as follows:   "If one who has lost goods by theft goes to the house of the person whom he suspects to have stolen them and then in reply

to questions put as to the object of his visit accuses that person of theft and states the grounds of his accusation the communication is privileged, if made in good faith, with the belief that it is true and without express malice, although made in the presence of others and although it may have been intemperate and excessive from excitement." Those conditions did not obtain here. No inquiry was put to the defendant. His statement was purely voluntary.

The ruling stands and as no motion was filed in the slander suit judgment must follow the verdict.

### 2. SUIT FOR ASSAULT AND BATTERY.

This is before the Law Court only on a general motion. We think the motion should be sustained on the ground that the plaintiff is entitled to only nominal damages if anything.

A careful study and sifting of the evidence can detect only a technical assault and battery by the defendant, when he placed his hand in the plaintiff's pocket and removed the empty rouge box. A persistent attempt was made to magnify this and by leading questions to inject other elements, but we think this was the extent of the charge of assault and battery. There were no actual damages and therefore there could be no punitive damages. Yet the jury gave a verdict of $820.92. We cannot escape the conclusion that they practically duplicated the damages in the two actions, giving the plaintiff in the slander suit $1,016.92, which must have included both actual and punitive damages, and was a generous sum, and then allowing as much less only two hundred dollars in the assault and battery case where no damage whatever was proved. The slander was the main offense; assault and battery merely technical and trifling. This verdict should not stand. The plaintiff in this action was entitled to only nominal damages.

The result in the two cases therefore is this,

> *In the slander suit, exceptions overruled.*
> *In the assault and battery suit, motion overruled if the plaintiff remits all of the verdict in excess of $1.00 within thirty days after rescript is filed with the Clerk of the Law Court; otherwise motion sustained.*
> *So ordered.*